## SHUFELT *vs.* SHUFELT and others.

Where an administrator found among the papers of the decedent certain promissory notes which had been given to him in his lifetime, and supposing them to be justly and legally due, called upon the maker of the notes for payment, who voluntarily confessed a judgment for the amount ; and subsequently mortgaged his real estate, upon which such judgment was a lien, to his father : *Held,* that the mortgagee could not impeach the consideration of the judgment, by showing that the notes upon which it was founded were given upon a sale of tickets in a lottery not authorized by law, and contrary to the statute.

Where a person apparently indebted to the estate of a deceased creditor, upon being called upon for payment, voluntarily confesses a judgment for the debt to the personal representative of the supposed creditor, without apprising him that the demand is illegal, the defendant in the judgment, and those claiming under him subsequent thereto, are estopped from denying the validity of such judgment.

In a foreclosure suit, if it appears from the complainant's bill that he has recovered a judgment for the mortgage debt, or that the mortgage was given

as a collateral security for a demand which was already in judgment, the complainant must show that he has exhausted his remedy upon the judgment at law, or the defendant in the foreclosure suit may demur to the bill, or may raise the objection in his answer.

Where the bill in a foreclosure suit shows that a judgment has been recovered for the mortgage debt, the court cannot make a decree of foreclosure until an execution has been issued upon the judgment and returned unsatisfied, although the defendant has suffered the bill to be taken as confessed against him.

The owner of land who has given a usurious mortgage thereon may sell or mortgage the land to another, generally, and give to such purchaser, or mortgagee, the same right to contest the validity of the first mortgage as he has himself. But he may affirm the validity of the usurious mortgage, by selling the equity of redemption in the mortgaged premises only, or by selling or mortgaging the land subject, in express terms, to the previous mortgage ; in which case the purchaser, or subsequent mortgagee, will be entitled to the equity of redemption merely, and cannot question the validity of the prior mortgage.

April 6.    THIS was an appeal from a decree of the late vice chancellor of the third circuit. The bill was filed to foreclose a mortgage given to the complainant, by the defendant J. Shufelt, in April, 1835 ; and B. I. Mynderse and N. Van Vranken, the administrators of A. Mynderse, were also made defendants as the holders and owners of a judgment, against the mortgagor, which was a lien upon the mortgaged premises. The bill, after stating the execution of the bond and mortgage, set forth the recovery of a judgment in the supreme court, on the 15th of September, 1834, in favor of B. I. Mynderse as special administrator of his brother A. Mynderse ; letters *ad colligendum* on the estate of the latter having been issued, by the surrogate, immediately after his death and previous to the recovery of such judgment. The bill alleged that the judgment was entered upon a bond and warrant given to such special administrator, for a pretended debt, of $743,50, due from J. Shufelt to the intestate. The complainant further stated that the debt for which the bond and warrant were given arose upon the sale of lottery tickets to J. Shufelt, by the intestate in his lifetime ; and that the greater part of such debt was for lottery tickets not authorized by the laws of this state ; that the lottery tickets were sold to J. S. in the years 1832,

1833, and 1834 ; that only about $190 of the consideration of the notes for which the judgment was given, was for tickets in lotteries authorized by the laws of this state ; and that the residue thereof was for tickets in lotteries of other states, the sale of which was forbidden by the statute of this state. The bill further stated that the mortgagor was insolvent, and that the defendant B. I. Mynderse had a prior mortgage upon the premises, which were not worth more than sufficient to pay such prior mortgage and the complainant's debt. The bill also stated an accounting between the mortgagor and the administrators, in relation to other matters of account between him and the intestate, in which a balance of $47 was found due to the mortgagor ; which the complainant insisted should be applied towards the satisfaction of so much of the judgment as was founded upon a legal consideration. The complainant further stated that he had tendered and offered to pay the residue of such legal consideration, and costs, &c. He therefore prayed for a decree of foreclosure and sale, and that Mynderse and Van Vranken might be decreed to release, cancel, and discharge the judgment, or to release and discharge the mortgaged premises from the lien of the judgment ; and that they might be restrained by injunction from selling the premises by execution upon their judgment ; or that the lien of the judgment might be postponed to that of the complainant's mortgage ; and for general relief.

The bill also contained the usual allegation, that no proceedings had been had at law for the recovery of the debt secured by the complainant's bond and mortgage, or any part thereof. But it appeared in the bill itself that the bond and mortgage were given in part as a collateral security for a debt of $2730, for which a judgment had been recovered by the complainant, against the mortgagor, in the supreme court. The defendants Mynderse and Van Vranken therefore insisted in their answer that the complainant was not authorized to proceed to foreclose his mortgage, in this court, without showing that he had exhausted his remedy at law for the recovery of that part of the mortgage debt,

by the return of an execution on the judgment unsatisfied, as directed by the statute. They also stated in their answer that when B. I. Mynderse was appointed special administrator, to collect the debts and preserve the property belonging to his deceased brother's estate, there came to his possession four promissory notes of different dates, purporting to have been given to the decedent by John Shufelt, the amount of which notes, with the interest thereon, was $743,50 ; that the special administrator, in order to secure the payment of the said notes, immediately called upon the drawer and presented the said notes and requested him to secure the amount ; that Shufelt admitted his indebtedness and consented to give a judgment for the debt and to pay the same as soon as he received the avails of his farm which he had contracted to sell; and that a bond and warrant were thereupon given for the amount, upon which a judgment was entered in the supreme court. These defendants also denied all knowledge of the consideration of the several notes for which such judgment was given. They likewise denied any information on the subject, except from the subsequent allegations and pretences of the defendant J. Shufelt. And they therefore stated it as their belief, and insisted, that the notes were given upon a good and valid consideration ; and that the judgment was a valid and available lien, in favor of the estate of the decedent, not only as against the defendant therein but also as against the complainant as a subsequent incumbrancer.

J. Shufelt the mortgagor suffered the bill to be taken as confessed against him. And the complainant having filed a replication to the answer of the other two defendants, examined him as a witness to prove the allegations in the bill ·as to the consideration of the notes for which their judgment was given ; although they objected to the witness as incompetent. Upon his testimony the vice chancellor decided and decreed that the judgment of the administrators was not a preferable lien upon the mortgaged premises, except as to the sum of $185 ; and that the residue of the said judgment should be postponed until the

complainant's mortgage was satisfied ; which mortgage, except as to the $185, was declared and decreed to be a prior lien upon the mortgaged premises, in the same manner as if it had been duly registered before the docketing of such judgment. He also directed a reference to compute the amount due upon the complainant's mortgage, and reserved all further questions and directions until the coming in and confirmation of the master's report. From this decree Mynderse and Van Vranken, the administrators, appealed.

*A. L. Linn & A. C. Paige,* for the appellants. John Shufelt was an incompetent witness for the complainant, being interested in the event of the suit. (5 *Paige*, 632. *Hoffm. Ch. Pr.* 485. 1 *Cowp.* 198.) Barent I. Mynderse was a competent witness in behalf of the estate of Aaron Mynderse deceased, being only a formal party as administrator and having no personal interest in the suit. (5 *Paige*, 638.)

The complainant having examined John Shufelt as a witness can have no decree against him as to any matters to which he was examined, and therefore not against the other defendants ; as the foundation of the relief sought against them is connected with the relief sought against him. The complainant being a third person, and a subsequent judgment creditor and mortgagee, cannot enquire into the consideration of the judgment given by John Shufelt to Barent I. Mynderse. (*Cowp.* 793. 2 *W. Black.* 1073. 12 *John. Rep.* 10, 11. 10 *Id.* 186. 6 *John. Ch. Rep.* 235. 5 *Id.* 569. 20 *John. Rep.* 668. 20 *Id.* 296. 2 *John. Ch. Rep.* 144. 9 *John. Rep.* 80. 1 *R. S.* 669.) John Shufelt himself, having voluntarily and without fraud or imposition confessed the judgment, can have no relief against it. He might have had against the notes, if he could have proved the illegality of their consideration. (5 *John. Ch. Rep.* 565, 566, 145.) This illegality he could not (if Aaron Mynderse had been living) have compelled Mynderse to discover, as the discovery would have subjected him to a penalty or forfeiture. (1 *R. S.* 669, § 26, 29 *to*

32. 3 *Paige*, 528. 2 *Bridg. Dig. tit. Gaming.* 4 *Idem*, *title Disc.* § 36; 38, 39, 41, 62. 2 *Idem*, *title Forfeiture*, § 3. 11 *Vesey*, 296, 373.) John Shufelt would have had no remedy by a summary application to the equitable pow- ers of the supreme court. He would have been compelled to resort to chancery for relief. And when there he could not have compelled Aaron Mynderse to discover the con- .sideration. (11 *Wend.* 335. 3 *Paige*, 532. 5 *John. Ch. Rep.* 137.) What John Shufelt could not effect, cannot thus indirectly be effected, by his creditor making him the witness to prove the consideration. John Shufelt, if he could have proved the consideration, could have had no remedy against Aaron Mynderse, as they were *in pari de- licto*—the law leaving them as it found them, not aiding either. (12 *John. Rep.* 11. *Cowp.* 2007. 11 *John. Rep.* 23.) The complainant has no equity as against the judg- ment; as his debt has been contracted, or the greater part of it, since his knowledge of the judgment. (5 *John. Ch. Rep.* 565.) The judgment was not given to defraud credi- tors, and therefore it cannot be set aside at the instance of a creditor. A portion of the mortgage debt is secured by a judgment, and no execution has been issued and returned thereon. The complainant is therefore precluded from the relief he seeks. (2 *R. S.* 118, 119, § 161, 162. 4 *Paige*, 549.)

*A. Vanderpoel & W. H. Tobey*, for the respondents. The judgment to Barent I. Mynderse, collector, &c. of the estate of A. Mynderse, deceased, ought to be postponed to the lien of the complainant's mortgage, and the mortgaged premises ought to be relieved from the lien created there- by; because, with the exception of $190, it was given for a consideration prohibited by statute (lottery tickets,) to which a penalty was affixed and was therefore void. (3 *Paige*, 320. 1 *R. S.* 665, 6, § 26, 29, &c. 14 *John. Rep.* 273, 290. *Fonb. Eq.* 191, *note.* 1 *Com. on Con.* 28. 2 *Will.* 351. *Fonb. Eq.* 193, *note.* *Doug.* 614, 716.) The defendant, John Shufelt, not being interested in the

matter for which he was called, and to which he was examined, was a competent witness. (2 *Vesey & Beam.* 401. *Hoffman's Master*, 18.) The defendant, Barent I. Mynderse, being an administrator, and being interested to swell the assets, is not a competent witness, and his deposition ought, therefore, to be suppressed. (2 *Eq. Dig.* 1001. 5 *Mad.* 353. 1 *Ball. & Beat.* 96.) The $170 of prize money ought to be applied to the payment of the $190, which was the only portion of the consideration of the judgment that was legal. The residue of the consideration of the judgment was for lottery tickets, the sale of which was not only not authorized, but was expressly prohibited by the laws of the state, and declared a nuisance. (9 *Cowen*, 775—*Note, as to application of general payments.*) Should the prize money ($170,) be applied to that portion of the judgment which was founded upon a good and valid consideration, then there was only about the sum of $20 due upon the judgment when it was entered; and the complainant tendered much more than was actually due, as he tendered $185. The objection that a judgment has been taken for a part of the mortgage debt and that no execution has been issued and returned thereon, is not well taken. The mortgagor alone can take this objection. The mortgage was given subsequent to the judgment, and therefore the statute does not apply. The complainant's bill is filed to obtain relief against an incumbrance improperly or fraudulently created; and in such a case it is not necessary that an execution should be sued out previous to the filing of the bill. (2 *R. S.* 191. 4 *Paige*, 549. 3 *Id.* 320.)

THE CHANCELLOR. It is not important in this case, to examine the question whether Mynderse, one of the administrators, was a competent witness to sustain the validity of the judgment due to the estate which he represented; as the only material fact to which his testimony related was fully proved by Mr. Linn. This last witness establishes the fact that the defendant B. I. Mynderse, as the special

administrator, had in his possession four promissory notes given by J. Shufelt to the decedent; and that Shufelt, upon being applied to by such admnistrator to pay or secure those notes, voluntarily consented to give the judgment in question for the amount of them. Upon that proof, which is undisputed, the important question arises whether a subsequent mortgagee, or incumbrancer, of the judgment debtor can call in question the validity of that judgment as a legal lien upon the real estate of the defendant therein. And the conclusion at which I have arrived upon that point, renders it also unnecessary for me to decide whether the defendant J. Shufelt, the mortgagor, who had suffered the bill to be taken as confessed, was a competent witness for his father, the complainant, to prove the allegations in his bill as to the illegality of the transactions which constituted the consideration of the notes for which this judgment was afterwards confessed.

There is no pretence in this case that the judgment was given in consequence of any fraudulent or collusive agreement between the special administrator and the defendant in the judgment, for the purpose of depriving the creditors of the latter of the means of recovering their just debts. Nor is there any evidence to show that the special administrator knew, or had any reason to suppose, at the time he obtained the judgment for these notes, that they were not legally due and collectable. Neither is there any allegation in the complainant's bill, that any part of the debt, for which the complainant's mortgage was given, was due from his son at the time the latter confessed the judgment in favor of the special administrator; or that the son was not at that time able to pay all his debts, in addition to this amount claimed to be due to the estate of A. Mynderse. And it appears, from the testimony, that the complainant took the mortgage with full knowledge of the existence of the judgment given to the special administrator; and that the mortgage money, exclusive of that which was already secured by the bond and warrant of the 26th of February, 1835, was advanced after he had such knowledge. It is

1841.

Shufelt
v.
Shufelt.

impossible therefore for any one to wink so hard as not to see that the advance of this additional $1200, and the giving of a mortgage sufficiently large to cover the whole value of the mortgaged premises exclusive of the previous mortgage thereon, was a mere device to enable the complainant to bring this suit for the purpose of contesting the validity of the judgment belonging to the estate of A. Mynderse; the payment of which the defendant in the judgment could not successfully resist by a suit in his own name. In other words, it was an indirect purchase, by a stranger to the transaction, of the privilege of bringing a suit in this court to set aside or overreach this judgment, by the use of the testimony of the party against whom the judgment was recovered. And I doubt whether a court of equity ought to lend its aid to carry into effect such an arrangement, under any circumstances.

In the ordinary case of the giving of an usurious mortgage, by the owner of the mortgaged premises, the statute having declared the usurious security void, the owner of the premises of course has the right to sell his property, or to mortgage the same, as though such void mortgage had never existed. And the purchaser, in such a case, necessarily acquires all the rights of his vendor to question the validity of the usurious security. For if the original mortgagor had not that right, the premises would, to a certain extent, be rendered inalienable in his hands; notwithstanding the incumbrance thereon was absolutely void as to him. He may, however, if he thinks proper to do so, elect to affirm the usurious mortgage, by selling his property subject to the payment or to the lien of such mortgage. And the purchaser, in that case, takes the equity of redemption merely, and cannot question the validity of the prior mortgage on the ground of usury. (*Green* v. *Kemp,* 13 *Mass. Rep.* 515. *Bridge* v. *Hubbard,* 15 *Idem,* 103.) But in the case of a judgment, like the present, which is a valid and subsisting debt against the defendant, and a lien upon his real estate, at least until he thinks proper to institute some legal proceedings to set aside such judgment, there is a man-

ifest impropriety in permitting every voluntary purchaser, or mortgagee, of any portion of the property upon which such judgment is a lien, to file a bill in his own name to impeach the consideration of that judgment. My learned predecessor Chancellor Kent, in the case of *French* v. *Shotwell*, (5 *John. Ch. Rep.* 567,) came to the conclusion that a subsequent purchaser, who was aware of the existence of such a judgment at the time of his purchase, was not authorized to call the judgment in question where the judgment debtor himself did not think proper to do so. He says, " the judgment precludes on general principles; for the purchaser voluntarily comes in under the judgment *pro bono et malo* ; and except in the special case in which the judgment was confessed collusively and by a corrupt agreement to defraud some subsequent purchaser, a case hardly to be supposed, he must take the lien as he finds it, and has no business to interfere with the contracts of other people."

I am aware that the very distinguished counsel, the late Mr. Henry, who filed the bill and argued the case of *French* v. *Shotwell*, was not satisfied with the decision of the chancellor upon the plea in that case. And the reporter erred in supposing that there was an appeal from the chancellor's decision upon the rehearing of the plea; and that such decision was affirmed by the court of dernier resort, as is stated in the report. (*See* 20 *John. Rep.* 668.) It appears from the printed case, and from the opinion of the then chief justice delivered in the court for the correction of errors, both of which I formerly had occasion to examine, that the only appeal was from the decretal order of August, 1822, overruling certain exceptions to the defendant's answer. (*See* 6 *John. Ch. Rep.* 235.) And the complainant having lost the right to appeal from the order allowing the plea, by his neglect to enter his appeal within fifteen days, his counsel attempted to review the decision of the chancellor upon the plea, under the appeal from the subsequent order of August, 1822. But the chief justice stated distinctly, in his opinion, that the court for the cor-

1841.

Shufelt
v.
Shufelt.

rection of errors could not upon that appeal examine the correctness of the plea; and that the appellate court was confined to the question arising on the master's report upon exceptions to the answer. I will not therefore say it is conclusively settled that a subsequent purchaser, or mortgagee, can in no case call in question the validity of a judgment voluntarily confessed by the vendor or mortgagor under whom he claims title. But in a case like the present, where an individual apparently indebted to the estate of a deceased person, upon being called on by the representative of the decedent to pay or secure the debt, voluntarily confesses a judgment for the amount, without intimating that he has any legal or equitable defence to the debt or any part thereof, I think the debtor himself is estopped from questioning the validity of such a judgment, in any court, unless he can show that some mistake has occurred; in the same manner as he would be estopped if the judgment had been recovered against him in an ordinary suit at law for the collection of the debt. This bears no resemblance to the common case of giving a bond and warrant to secure the performance of an agreement for an usurious loan, or where the judgment itself constitutes a part of an immoral and void agreement; in which cases this court, as well the court of law in which the judgment has been entered, may set the same aside upon equitable principles. And if J. Shufelt himself would not have been authorized to file a bill in this case to set aside the judgment, on account of the alleged illegality of the consideration of the notes which constituted the original indebtedness, a subsequent grantee or mortgagee of the property upon which that judgment is a lien certainly cannot question the validity of such lien.

I am also inclined to think there is not sufficient on the face of the complainant's bill to show that the consideration of the notes for which the judgment was confessed was illegal. For it is not alleged that the foreign lottery tickets, for which those notes were given, were sold in this state, or that A. Mynderse, at the time of such sale, resided

or kept his lottery office in the state of New-York. But this is a mere technical defect ; as the proof shows that he resided at Schenectady, and the sales of the lottery tickets were unquestionably made there, from whatever place the vendor might have procured them.

There is, however, a substantial and fatal defect in the complainant's bill, considering it as a bill for the foreclosure of the mortgage given to him by his son. For it appears from the bill itself, as well as from the evidence in the case, that the complainant has recovered a judgment in the supreme court for more than two-thirds of the debt secured by the mortgage. And the statute is imperative, that, upon a bill of foreclosure, if it appears that any judgment has been obtained in a suit at law for the moneys demanded by such bill, or any part thereof, no proceedings shall be had in such case unless to an execution, against the property of the defendant in such judgment, the sheriff shall have returned the execution unsatisfied, in whole or in part, and that the defendant has no property whereof to satisfy such execution except the mortgaged premises. (2 *R. S.* 192, § 146, *new ed.* § 162.) The judgment of the complainant, which was entered in this case in February, 1835, is a judgment for a part of the moneys demanded by him in this bill ; for the recovery and satisfaction of which moneys he seeks a foreclosure and sale of the mortgaged premises. In such a case, as this court has recently decided, if the fact of the recovery of the judgment appears in the bill, the complainant must go still further and show that he has exhausted his remedy at law, upon the judgment ; or the defendants in the foreclosure suit may demur to the bill on that account, or they may urge that objection in their answer, to prevent a decree of foreclosure. Or, if this objection does not appear upon the bill, and the complainant has falsely alleged that no proceedings at law have been had, the defendant may plead the recovery of such judgment in bar of the foreclosure suit. (*The North River Bank* v. *Rogers*, 8 *Paige's Rep.* 648.) And if the fact of the recovery of such judgment

appears in the bill itself, the court cannot make a decree of foreclosure until the execution has been returned unsatisfied ; although the defendant has suffered the bill to be taken as confessed against him.

For these reasons the decree appealed from must be reversed, with costs to the appellants. And the bill, so far as it seeks to call in question the validity of their judgment against the mortgagor, or to affect the priority of the lien thereof upon the mortgaged premises, must be dismissed absolutely and unconditionally, with costs to them. But so far as it seeks a foreclosure of the complainant's mortgage, it must be dismissed as to all the defendants ; without prejudice to his right, after he shall have exhausted his remedy at law upon his judgment for the recovery of the part of the mortgage moneys included therein, to file a new bill to foreclose and obtain satisfaction of his mortgage out of the mortgaged premises, subject to the prior lien of the appellants thereon, by virtue of their judgment and the lien of the mortgage to the defendant Mynderse upon the same premises.