THE ROCHESTER SAVINGS BANK, RESPONDENT, *v.* JAMES G. AVERELL AND OTHERS, APPELLANTS.

*Manufacturing corporation — execution of a mortgage by it — failure to file the stockholders' consent in the proper county — when a subsequent mortgagee with knowledge of the fact cannot attack it.*

The plaintiff loaned to a manufacturing corporation, created under the general manufacturing act, $10,000, and received from it a bond executed not only by the company but also by certain other persons as sureties, and also a mortgage upon the real estate of the company as collateral thereto. The requisite consent of the stockholders to the execution of the mortgage was not given at the time, but the same was subsequently given and thereupon the mortgage was reacknowledged and again recorded. By mistake the consent was not filed in the office of the clerk of the county where the land was situated, but it was filed in another county clerk's office. Subsequently another mortgage was duly given by the company upon the same property, which was at the request of the trustees of the company foreclosed and the premises covered by the plaintiff's mortgage were purchased by the defendants Averell, who were stockholders and creditors of the company. Both the second mortgagee and the defendants Averell had full knowledge of the existence of the plaintiff's mortgage.

*Held,* that the defendants Averell could not dispute the validity of the plaintiff's mortgage on the ground that the consent of the stockholders to the execution thereof had not been filed in the proper county.

APPEAL from a judgment of foreclosure, entered upon the decision of a Special Term, directing the sale of the premises described in the plaintiff's mortgage, for the purpose of realizing $10,000 and interest thereon due to the plaintiff. The mortgage was given by the Ontario Iron Company, a manufacturing corporation organized under the Law of 1848.

The defendants set up that the mortgage was void, because no consent, in writing, of the stockholders of the Ontario Iron Company, to the making of the plaintiff's mortgage, was ever filed in the clerk's office of Wayne county, that being the county where the real estate mortgaged was situated.

The plaintiff's mortgage was made January 2, 1874, and recorded January 21, 1874. No consent of the stockholders had then been obtained, but in November, 1874, a consent of more than two-thirds of the stockholders was obtained and the mortgage was then reac-

knowledged and again recorded.   By the inadvertence or mistake of the attorney for the bank, the consent was not filed with the clerk of Wayne county, but with the clerk of Monroe county.   Subsequently, May 9, 1877, the Ontario Iron Company being indebted to Clark, Dodge & Co., of New York, for amount of $59,000, made its bond and mortgage upon the same real estate to James S.. Bean, who advanced the money for the purpose of taking up the debt to Clark, Dodge & Co.   In 1878, Bean, at the request of the trustees of the iron company, foreclosed the said mortgage and caused the premises covered by the plaintiff's mortgage and by his own, to be sold on the 9th day of August, 1878, and the referee's deed to be given to James G. and William Averell for $31,500.   The Averells thereupon went into possession of the premises.

The Averells became stockholders in the iron company in July, 1874, and held 570 shares of stock of the par value of $57,000, and they have ever since continued to be stockholders.   In January, 1875, they became trustees in the said company and resigned in April, 1877.   In May, 1878, the company was insolvent and obliged to stop business.

Several stockholders' meetings were held in 1878, for the purpose of arranging the affairs of the company, and the defendants, Averells, were present at two of the meetings, viz., William at one held August 20, 1878, and James G. Averell at the one held on October 18, 1878.   A statement of the affairs of the iron company was prepared in January, 1877, which was signed by both of the Averells, and it stated that the debts then existing against said corporation were $191,404.28.   In that statement the plaintiff's debt of $10,000 was included, and a debt of about $58,000 to Averells and their firms.

The assent of the stockholders to the $59,000 mortgage to Bean bears date April 6, 1877, and was executed, among others, by the Averells.

*Louis Hasbrook*, for the appellants.

*Edward Harris*, for the respondent.

HARDIN, J.:

The Ontario Iron Company was indebted to sundry persons, and for the purpose of paying those debts it applied to the plaintiff, in

1874, to borrow, and did borrow $10,000, with which it paid off the indebtedness of the company.

The object of the loan was within the provision of the act of 1848 (chap. 40, as amended by sec. 2, chap. 517 of 1864), authorizing a mortgage upon its property to pay debts. (*Carpenter* v. *Black Hawk G. M. Co.*, 65 N. Y., 44.)

Had the assent of two-thirds of its stockholders been obtained and filed the mortgage would have been valid. But the mortgage was put upon record without obtaining such assent and was, therefore, invalid. (*Vail* v. *Hamilton*, 20 Hun, 355; S. C. affirmed, 12 Weekly Dig., 417; *Greenpoint Sugar Company* v. *Whitin*, 69 N. Y., 334.)

In November, 1874, the assent of two-thirds of the stockholders approving of such mortgage was obtained, and by *inadvertence or mistake* it was not filed in the clerk's office of Wayne county where the property mortgaged was situated, but was filed in the clerk's office of Monroe county.

The mortgage was not thereby rendered valid; it still remained inoperative under the acts of 1848 (chap. 40) and the amendment of 1864 (chap. 517), if the filing of such assent is to be regarded as a condition precedent. It seems, as against an incumbrancer in good faith or a purchaser in good faith, having no notice that such assent had been obtained, the mortgage must be deemed inoperative.

But in this case the assent was obtained, and therefore as to the stockholders and the company the object of the statute was answered. Filing of the assent must be assumed to be required to apprise subsequent incumbrancers of the amount in which the stockholders have authorized their property to be incumbered.

It is found as a fact that Bean as well as said Averills had full knowledge of the existence of the plaintiff's mortgage at the time he took his bond and mortgage from said company. We cannot say the finding is unsupported by the evidence offered and received at the trial. The defendants Averells are not purchasers in good faith. They had notice of facts sufficient to put them upon inquiry, and it must be assumed that before they purchased the premises at the referee's sale they ascertained that two-thirds of the stockholders

had actually assented to the mortgage held by the plaintiffs. (*Williamson* v. *Brown*, 15 N. Y., 356; *Brumfield* v. *Boutall*, 24 Hun, 456.) Besides, in equity the lands had become the primary fund for the payment of the plaintiff's debt.

A bond had been executed by the iron company for the money borrowed of the plaintiffs, and the plaintiff's mortgage was held as collateral to that bond, which was not only the bond of the iron company but of Howard, Kellogg, Rogers & Howe, as sureties. When the bond and mortgage are read together in the light of the facts, and the situation of the parties at the time they were executed, it is apparent that the iron company was the principal debtor and the other persons executing the bond were sureties. They had the right, therefore, to have the property of the principal debtor considered in equity as the primary fund for the payment of the plaintiff's debt; and it must be assumed that Bean and the Averills being put upon inquiry knew of the relation occupied by the sureties upon the bond to the plaintiff, and that when the Averells purchased from the referee they were aware that in equity, as to the company as well as to the stockholders, the lands had been appropriated to pay the plaintiff's debt. (*Carpenter* v. *B. H. G. M. Co.*, *supra*.)

The object of the statute may be answered if we assume the defendants are not in a situation to invoke the statute to invalidate the plaintiff's mortgage, and thereby vest them with an interest in the lands, which in equity they ought not to have; and if good faith is observed by them, they ought not to attempt to assert.

The defendants ought not to be heard in objecting to the validity of the mortgage held by the plaintiff.

The purpose of the statute was to protect stockholders of the company and *bona fide* creditors of the company. (*Beecher* v. *Marquette and Pacific Rolling Mill Co.*, opinion of COOLEY, J., and cases cited, 23 Albany L. J., 316; *Post* v. *Dart* 8 Paige, 639, and note).

In equity the plaintiff's mortgage was a lien, valid against the company and its stockholders, and ought to be maintained as a lien upon the premises as against the defendants, Averills, who acquired the legal estate with full knowledge that the lands, as the primary

fund, ought to pay the debt held by the plaintiff. (*Lanning* v. *Tompkins*, 45 Barb., 316 ; *Payne* v. *Wilson*, 74 N. Y., 352.)

If we test the position of the defendants by an inquiry as to what the intent of the company was in giving the second mortgage, after its stockholders had (two-thirds of them) assented to the prior mortgage, we must come to the conclusion that it did not intend to transfer any greater interest in the equity of redemption than remained after the prior mortgage had been taken therefrom.

That being so, the defendants are in no better position than Hyde and Everett were when they sought to invalidate a prior mortgage, which was, by the terms of their mortgage, made a prior lien upon the property of their mortgagor. (*Hardin* v. *Hyde and Everitt*, 40 Barb., 435.)

Upon the mortgage given by the company to the plaintiff, and the bond, together with the assent of two-thirds of the stockholders the plaintiff relied, and, therefore, the company ought to be estopped from questioning the security of the plaintiff ; being estopped, those claiming under it, with notice of facts sufficient to put them on inquiry, equitably ought to be held equally estopped.

Of course, in the views already expressed, it is borne in mind that this case differs from *Vail* v. *Hamilton* (*supra*), where there was not the requisite assent given by the stockholders, while here the assent was given but not filed.

And this case differs from that long line of cases holding that in the case of a party succeeding to the legal title by execution and judgment sale, or by purchase made irrespective of the prior incumbrance ; that a defense of usury may be made to the prior incumbrance. As the statute as to usury differs from the one now before us, and the cases arising where such a defense has been interposed successfully, rest upon the statute. (*Dix* v. *Van Wyck*, 2 Hill, 522 ; *Williams* v. *Tilt*, 36 N. Y., 325 ; *Mason* v. *Lord*, 40 N. Y., 476 ; *Merchants' Ex. Bank* v. *Com. Warehouse Co.*, 49 N. Y., 635 ; *Knickerbocker Life Ins. Co.* v. *Hill*, 16 Abbott [N. S.], 327.)

The defense interposed by the Averells is not predicated upon their right as stockholders to question the first mortgage, but it is interposed rather upon their position of purchasers of the legal title.

We see no force in the suggestion that the iron company or its receiver was a necessary party. The defendants Averells had

acquired the legal title, and they represented .the fee to be affected by a sale upon the plaintiff's mortgage.

Judgment should be affirmed, with costs.

HAIGHT, J., concurred; SMITH, P. J., not voting.

Judgment affirmed, with costs.